IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEBORAH PUSTULKA, | : |
| Plaintiff, | : |
| v. | : Case No. 1:22-cv-00342 |
| BOARD OF EDUCATION OF THE LORAIN CITY SCHOOL DISTRICT, et al., | : JUDGE SOLOMON OLIVER, JR. : MAGISTRATE JUDGE JONATHAN : GREENBERG |
| Defendants. | : |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

Plaintiff moves the Court for summary judgment as to liability on the grounds that the pleadings and attached Affidavit with Exhibits demonstrate that there is no genuine issue as to any material fact and that Plaintiff is entitled to judgment as a matter of law with respect to liability, as is more fully set forth in the following Memorandum.

Respectfully moved,

*/s/ Dennis L. Pergram*
Dennis L. Pergram (0010853)
dpergram@mmpdlaw.com
Stacy V. Pollock (0080229)
spollock@mmpdlaw.com
MANOS, MARTIN & PERGRAM CO., LPA
50 North Sandusky Street
Delaware, OH 43015-1926
(740) 363-1313
Fax:  (740) 363-1314
*Counsel for Plaintiff*

**MEMORANDUM IN SUPPORT**

I. INTRODUCTION

Plaintiff Deborah Pustulka (hereinafter "Ms. Pustulka") is a public school principal who was employed by Defendant Board of Education of the Lorain City School District (hereinafter "Defendant Board") under an administrator's contract entered into pursuant to R.C. 3319.02. Defendant Jeffrey Graham (hereinafter "Defendant Graham") is and was at all times relevant the CEO of the Lorain City School District. Ms. Pustulka has brought this action because Defendant Graham, acting under color of state law, terminated Ms. Pustulka's administrator's contract without her having been afforded due process of law, thereby denying Ms. Pustulka her rights under the Fourteenth Amendment.

II. STANDARD FOR SUMMARY JUDGMENT

In *Teresa Johnson v. Allstate Property and Casualty Insurance Company, et al.*, Case No. 5:11cv0406, this Court articulated the standard for summary judgment as follows:

> Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).
>
> Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a

whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. Id. Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id*.

In this Motion for Summary Judgment, Ms. Pustulka will, with the support of her Affidavit and the pleadings, demonstrate that there is no genuine issue of material fact and that she is entitled to summary judgment as to liability as a matter of law.

III. STATEMENT OF FACTS THAT ARE NOT IN DISPUTE

1. Ms. Pustulka was employed by the Defendant Board as a principal under an administrator's contract under R.C. 3319.02 (para. 2 of Affidavit of Deborah Pustulka and Exhibit A attached thereto).

2. Defendant Graham is and was the CEO of the Lorain City School District and Ms. Pustulka received a letter dated December 16, 2021 from Defendant Graham wherein he stated in part:

> I have determined that you cannot carry on as an administrator for the school district because your conduct is not consistent with accomplishing my plan to remove the school district from academic distress. You are hereby removed from your position as principal effective immediately. Since your conduct also reflects poorly on your ability to serve the district as a licensed teacher you are also suspended without pay from any duties with the school district, also effective immediately.

3

(paras. 3 and 4 of Affidavit of Deborah Pustulka and Exhibit B attached thereto).

3. Ms. Pustulka received a letter dated December 16, 2021 from the Defendant Board's treasurer, which stated in part as follows:

> Chief Executive Officer, Dr. Jeffrey Graham, has determined that your conduct as Principal of Palm Elementary does not fit in with his plans to reconstitute Palm Elementary School. This letter also is formal notice of Chief Executive Officer for the District's, Dr. Jeffrey Graham's, removal of you as an administrator (Principal) for the Lorain City School District pursuant to Ohio Revised Code §3302.10. Your removal as Principal of Palm Elementary is effective immediately.

(para. 6 of Affidavit of Deborah Pustulka and Exhibit C attached thereto).

4. Ms. Pustulka's administrator's contract was terminated and effective on or about December 17, 2021, her pay as principal under her administrator's contract ceased and she has not been re-employed or received any pay since that time from the Defendant Board or Defendant Graham (para. 7 of Affidavit of Deborah Pustulka).

5. At no point in time has Ms. Pustulka received from the Defendant Board, its treasurer, or Defendant Graham any notice under R.C. 3319.16 informing her of any intention to considered the termination of her administrator's contact and she has not been provided with any of the procedures set forth in R.C. 3319.16 and 3319.161 with respect to her administrator's contract. The position of Defendant Graham and the Defendant Board is best set forth in the January 3, 2022 letter from the Defendant Board's treasurer, which states in part as follows:

> On December 21, 2021, Lorain City School District received a demand for referee hearing pursuant to Ohio Revised Code 3319.16 regarding the termination of Deborah Pustulka. (See attached). It is the position of this school district that as a district under academic distress, pursuant to ORC 3302.10, the CEO of the district has plenary authority to remove Ms. Pustulka from her position as principal of Palm Elementary. This district therefor objects to the jurisdiction of any referee to determine whether the termination of Ms. Pustulka as principal was for good cause. However, Ms. Pustulka has tenure rights and pursuant to the Ohio Revised Code has a hearing right to determine whether good cause exists to terminate her from the district in the capacity of a classroom teacher.

4

(paras. 9 and 10 of Affidavit of Deborah Pustulka and Exhibit D attached thereto).

6. Ms. Pustulka does have an underlying continuing contract as a teacher. That teacher's contract is not at issue as the Defendant Board is affording Ms. Pustulka her R.C. 3319.16 due process rights with respect to that teacher's contract as acknowledged in Exhibit D attached to the Affidavit of Deborah Pustulka.

IV. ARGUMENT

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the United States Supreme Court held that the Board of Regents did not have to provide Fourteenth Amendment due process protection to an assistant professor whose one year contract was merely "non-renewed" at the end of its term. In the instant case, Ms. Pustulka's administrator's contract was "terminated," not merely "non-renewed." The Roth court reminded as follows:

> Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, *Slochower v. Board of Education*, 350 U.S. 551, and college professors and staff members dismissed **during the terms of their contracts**, *Wieman v. Updegraff*, 344 U. S. 183, have interests in continued employment that are safeguarded by due process.

(at pgs. 576-577) (emphasis added). Defendant Graham terminated Ms. Pustulka's administrator's contract during its term.

The Ohio General Assembly's answer to the procedural due process required by the Fourteenth Amendment is R.C. 3319.16 and that statute has been determined to pass muster under the due process clause of the Fourteenth Amendment. In affirming a decision from this District Court, the Sixth Circuit in *Whitsel v. Southeast Local School District, et al.*, 484 F.2d 1222, commented on R.C. 3319.16 and stated as follows:

> Appellant's claim of denial of procedural due process requires less extensive discussion. Whitsel is correct in his contention that his continuing contract could not have been terminated without a hearing in which he would be informed of the

5

grounds for dismissal and be given an opportunity to challenge their sufficiency. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). The pertinent Ohio statute specifies the grounds for termination of a continuing contract, requires written notice and time to prepare a defense, and provides the option of requesting a referee to conduct the hearing instead of the school board, a stenographic record, the right of confrontation, the right to counsel, and the right to subpoena witnesses. It also provides for plenary review of an order of termination in the state courts.[7] Tested by every standard ever enunciated, these rights constitute procedural due process in a contract termination proceeding. *See* Perry v. Sindermann, supra.

Ms. Pustulka was employed as an administrator, under an administrator's contract (Exhibit A attached to Affidavit of Deborah Pustulka), under R.C. 3319.02, which provides for R.C. 3319.16 protection in relevant part as follows:

> Except by mutual agreement of the parties thereto, no assistant superintendent, principal, assistant principal or other administrator shall be transferred during the life of a contract to a position of lesser responsibility. No contract may be terminated by a board except pursuant to section 3319.16 of the Revised Code. No contract may be suspended except pursuant to section 3319.17 or 3319.171 of the Revised Code.

In *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, the Supreme Court of Ohio reminded that:

> At the outset of our analysis, we begin with the statutory language of R.C. 3319.02, which is a remedial statute that must be **construed liberally** in favor of **school administrators**. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d at 219, 6331 N.E.2d 150, citing *State ex rel. Smith v. Etheridge,* 65 Ohio St.3d 501, 605 N.E.2d 59 (1992), syllabus.

(Emphasis added.)

R.C. 3319.16 uses the term teacher but also applies to administrators, principals and treasurers under contract with a school board and states in relevant part as follows:

> The contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for good and just cause. . . . Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider termination of the teacher's contract with full specification

6

of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher. Within ten days after receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing . . . .

R.C. 3319.16 goes on to provide for the procedural due process of the hearing (i.e., right to counsel, calling of witnesses, cross-examination, right to subpoena witnesses, a stenographic record, an impartial referee to conduct the hearing and issue a report and recommendation, along with appeal rights).

Defendant Graham and the Defendant Board boldly take the position that they did not have to provide Ms. Pustulka with due process of law under R.C. 3319.16 because of R.C. 3302.10[1] (see Exhibits B and D attached to Affidavit of Deborah Pustulka). In Exhibit D, Defendant Board, through its treasurer, informed the Interim State Superintendent of Public Instruction that: "It is the position of this school district that as a district under economic distress, pursuant to ORC 3302.10, the CEO of the district has plenary authority to remove Ms. Pustulka from her position as principal of Palm Elementary."

The Merriam-Webster Dictionary defines "plenary" as "complete in every respect: ABSOLUTE, UNQUALIFIED." Before discussing what R.C. 3302.10 says and does not say, the Defendant Board's notion that the CEO has complete, absolute and unqualified power to terminate the contract of a public employee without regard for that employee's constitutional rights or, for that matter, any rights, is untenable. A public CEO has no such power and no state legislation can strip a public employee of her constitutional rights.

---

[1] In his letter (Exhibit B), Dr. Graham refers to R.C. 3319.10, which pertains to "Employment and status of substitute teachers."

7

R.C. 3319.02 has not been touched by R.C. 3302.10, nor has R.C. 3319.16. Nonetheless, without resort to R.C. 3319.16, Defendant Graham terminated Ms. Pustulka's administrator's contract without affording her due process of law under R.C. 3319.16.

In the landmark case of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the United States Supreme Court considered the due process rights of a public employee who was a classified civil servant who, under Ohio law, could only be terminated for cause. The issue in *Loudermill, id*., was whether the public employee, in addition to his post-termination appeal rights to the Civil Service Commission, was entitled to some form of pre-termination due process of law. The Supreme Court concluded that the public employee was entitled to a **pre-termination** opportunity to respond, coupled with **post-termination** administrative procedures as provided by Ohio law.

Ms. Pustulka mentions *Loudermill, id*., because Defendants may argue that Ms. Pustulka had a pre-termination opportunity to respond but whether that pre-termination opportunity was with respect to her administrator's contract or her continuing contract as a teacher, or both, is irrelevant because Defendants admit that she was not provided with any **post-termination** administrative procedures under R.C. 3319.16 with respect to her administrator's contract.

The Loudermill court emphasized: "First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. . . . (citing cases). While a fired worker may find employment elsewhere, doing so will take some time, and is likely to be burdened by the questionable circumstances under which he left his previous job."

The history of HB 70, now codified at R.C. 3302.10, is found in *Youngstown City School Dist. Bd. of Edn. v. State*, 161 Ohio St.3d 24, 2020-Ohio-2903, wherein the majority of the

8

Supreme Court of Ohio held that HB 70 does not violate the three-consideration rule articulated in Article II, Section 15(C) of the Ohio Constitution nor the right of voters to decide the number of members and the organization of the district board of education as guaranteed by Article VI, Section 3. While *Youngstown, id.,* makes for interesting reading, the Youngstown court never addressed the issue before this Court, and that is whether R.C. 3302.10 purports to give a CEO plenary power to fire school administrators under contract without affording administrators Fourteenth Amendment due process and their rights under R.C. 3319.16 and, if so, whether such plenary power is violative of the due process clause of the Fourteenth Amendment.

R.C. 3302.10(C)(1) provides, in relevant part, as follows:

> . . . The chief executive officer shall exercise complete operational, managerial, and instructional control of the district, which shall include, but shall not be limited to, the following powers and duties, but the chief executive officer may delegate, in writing, specific powers or duties to the district board or district superintendent:
>
> . . .

Two of the several areas listed are "hiring new employees" and "replacing school administrators and central office staff."

The General Assembly did not purport to give the CEO plenary power in the hiring of new employees. As mentioned above, plenary power is absolute, unqualified, which means it is subject to no review, judicial or otherwise. That would leave absolutely unchallenged a CEO's decision to hire a school employee without the required criminal background check or to hire an administrator or a teacher who does not possess the license required by the Department of Education. With respect to replacing school administrators, such plenary power would permit and leave absolutely unchallenged a CEO's decision to replace a school administrator because of that school administrator's race, sex, or other protected status or to replace a school administrator (like

Ms. Pustulka) without affording her the due process promised by the Fourteenth Amendment and R.C. 3319.16.

The General Assembly could not have intended to give such unchecked plenary power to a CEO. Rather, it gave a CEO the power and duty to hire new employees subject to the new employees' constitutional, federal and state law rights and it gave a CEO the power and duty to replace school administrators subject to the school administrators' constitutional, federal and state law rights.

In terminating Ms. Pustulka's administrator's contract, CEO Defendant Graham misunderstood his power and authority and exceeded his power and authority when he failed to afford her the due process of law required by the Fourteenth Amendment and R.C. 3319.16.

V.  CONCLUSION

"Due process is a growth too sturdy to succumb to the infection of the least ingredient of error," Justice Benjamin Cardozo in *Roberts v. New York*, 295 U.S. 264, 278 (1935)

While Justice Fortas was speaking to the First Amendment rights of students and teachers when he stated: "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the same can be said for administrators. Ms. Pustulka did not shed her constitutional right to due process of law at the schoolhouse gate.

Ms. Pustulka has demonstrated that there is no genuine issue of material fact as to liability and she is entitled to a judgment as a matter of law declaring that Defendants violated her Fourteenth Amendment due process rights with respect to the termination of her administrator's contract.

Respectfully submitted,

*/s/ Dennis L. Pergram*
Dennis L. Pergram (0010853)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022, a true and accurate copy of the foregoing Plaintiff's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Dennis L. Pergram*
Dennis L. Pergram (0010853)
*Counsel for Plaintiff*

11