UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH PUSTULKA, | ) | Case No. 1:22 CV 342 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| LORAIN CITY SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case are Plaintiff Deborah Pustulka's ("Plaintiff" or "Pustulka") Motion for Summary Judgment as to Liability (ECF No. 14), and Defendants the Lorain City School District Board of Education's (the "Board") and Lorain City School District's Chief Executive Officer Dr. Jeffrey Graham's ("Graham") (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 16.) For the reasons that follow, the court grants Plaintiff's Motion, denies Defendants' Motion, and dismisses Defendant Graham from this litigation as a named defendant.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff Deborah Pustulka was employed by the Defendant Board first as a teacher and then as the principal of Palm Elementary School in the Lorain City School District (the "District"), a public school district in Lorain County, Ohio. (Def.'s Mot. at PageID #111–12, ECF No. 16.) At all

times relevant to this case, Pustulka was employed under both a continuing contract as a teacher, and an administrator's contract governed by Ohio Revised Code § 3319.02 that was effective from August 1, 2020 through July 31, 2022. (*Id.*; Pl.'s Mot. Ex. A at PageID #79, ECF No. 14-1.)

At the time the instant conflict arose, the District was officially in a state of "academic distress" under Ohio Revised Code § 3302.10, due to educational challenges and student performance issues. (Def.'s Mot. at PageID #113, ECF No. 16.) Pursuant to § 3302.10, an academic distress commission had been appointed to address these challenges. (*Id.*) In May 2020, in accordance with its statutory mandate, the commission appointed a chief executive officer, Defendant Graham, tasked with creating and implementing a plan to improve the District's performance. (*Id.* at PageID #114.) The Chief Executive Officer of an academically distressed school district effectively takes on the powers generally held by the Board, and "exercise[s] complete operational, managerial, and instructional control of the district...[including r]eplacing school administrators and central office staff...[and h]iring new employees[.]" OHIO REV. CODE ANN. §3302.10(C). The CEO may also reconstitute any school in the distressed district, including by "[r]eplac[ing] the school's principal and/or administrative staff[.]" *Id.* §3302.10(H)(1)(b).

The District received a report from a parent that on November 1, 2021, a paraprofessional at Palm Elementary School forced her child to eat waffles that had been taken from a trash can in the school cafeteria. (Def.'s Mot. at PageID #116, ECF No. 16.) Plaintiff, as principal of the school, conducted the initial investigation of the complaint. (*Id.*) Subsequently, video surveillance footage showed that Plaintiff was present for and in close proximity to the cafeteria incident, and appeared to condone the paraprofessional's actions. (*Id.*) The District found that Plaintiff's handling of the incident constituted bad judgment and potential dishonesty, and on November 8, 2021, placed

Pustulka on paid administrative leave pending an investigation and decision as to her employment. (*Id.* at PageID #117.)

On December 7, 2021, the District sent Pustulka a letter notifying her to appear at a *Loudermill* hearing to determine whether her actions warranted disciplinary action, including suspension or termination from both her teacher and administrator positions. The letter read, in relevant part, as follows:

> This meeting will determine whether the instances of employee misconduct summarized below may warrant disciplinary action, such as further suspension without pay or termination from employment with Lorain City Schools. You may bring a union representative, please let us know if you plan to bring legal representation, as then the district will have legal representation there as well. At the hearing, you will have the opportunity to answer issues raised in this letter, and to provide any information related to the misconduct.
>
> The district is holding this hearing, as a follow-up to the investigation conducted by Erin Poplar, Esq. of Giardini, Poplar & Mason, LLC based upon the following reasons: The district received a report from a parent alleging that a paraprofessional forced a student to eat food taken out of the garbage during lunch on November 1, 2021 at Palm Elementary School. The district has concerns that you were in close proximity during the incident and allowed it to occur, in addition to concerns that you may not have been completely honest during the course of the investigation.
>
> After the meeting, Dr. Graham will assess all relevant and appropriate information and will make a determination as to what action, if any, should be taken. He has final authority to take actions on such matters.

(Def.'s Mot. Ex. 2 at PageID #132, ECF No. 16-2.) Pustulka appeared with counsel at the hearing, but was not entitled to call witnesses. (Pl.'s Reply at PageID #145, ECF No. 18.) Ultimately, following the hearing, Graham commenced formal action to terminate Pustulka from both her teacher and administrator positions. (Aff. of Jeffrey Graham at ¶ 30, ECF No. 16-1.) In a letter to Pustulka

dated December 16, 2021, Graham cited to his authority as CEO under § 3302.10 (despite an apparent scrivener's error as to the section number) and indicated that he was terminating Pustulka's administrator's contract because "[her] conduct is not consistent with accomplishing [his] plan to remove the school district from academic distress." (Pl.'s Mot. Ex. B at PageID #81, ECF No. 14-1.) The same day, Pustulka also received a letter from the Board's treasurer informing her that the District was initiating proceedings to terminate her teacher contract under Ohio Revised Code § 3319.16, and as such she had ten days to file a written demand for a hearing on that decision. (Pl.'s Mot. Ex. C at PageID #82, ECF No. 14-1.) The same letter reiterated that Graham had terminated Pustulka's administrator's contract, effective immediately, because he had "determined that [her] conduct as Principal of Palm Elementary does not fit in with his plans to reconstitute Palm Elementary School[,]" again pursuant to § 3302.10. (*Id.*)

Pustulka demanded a referee hearing under Ohio Revised Code § 3319.16 in order to determine whether the termination of her teacher's and administrator's contracts was for good cause. (Pl.'s Mot. Ex. D at PageID #83, ECF No. 14-1.) In a letter to the District superintendent dated January 3, 2022, the Board treasurer responded to Pustulka's request as follows, in relevant part:

> It is the position of this school district that as a district under academic distress, pursuant to ORC 3302.10, the CEO of the district has plenary authority to remove Ms. Pustulka from her position as principal of Palm Elementary. This district therefore objects to the jurisdiction of any referee to determine whether the termination of Ms. Pustulka as principle was for good cause. However, Ms. Pustulka has tenure rights and pursuant to the Ohio Revised Code has a hearing right to determine whether good cause exists to terminate her from the district in the capacity of a classroom teacher.

(*Id.*)

**B. Procedural Background**

Plaintiff brought the instant action on March 3, 2022, claiming that the Board and Graham had violated her Fourteenth Amendment due process rights by terminating her administrator's contract, in which she held a property interest, without following the procedures set forth in Ohio Revised Code § 3319.16, which embody the requirements of procedural due process in such contract terminations. (Compl. at PageID #3–4, ECF No. 1.) Plaintiff did not bring an action as to her teacher's contract, as the District offered her a post-termination hearing with regard to her termination as a teacher. (Pl.'s Mot. Ex. C at PageID #82, ECF No. 14-1.) Plaintiff seeks: (1) a declaratory judgment stating that Defendants cannot terminate her administrator's contract without affording her the rights codified in § 3319.16, and that, accordingly, the provisions of § 3302.10 do not excuse the CEO of an academically distressed district from adhering to § 3319.16; (2) an order awarding Plaintiff back pay, compensatory damages for her lost benefits and service credits, compensatory damages for her mental anguish and distress, punitive damages as applicable, and attorneys' fees; and (3) an award of costs and other relief to which the court finds Plaintiff is entitled. (Compl. at PageID #5, ECF No. 1.)

Plaintiff filed a Motion for Summary Judgment as to Liability (ECF No. 14) on August 15, 2022. Defendants filed a Brief in Opposition (ECF No. 15) to Plaintiff's Motion on September 14, 2022, and Plaintiff filed her Reply (ECF No. 17) on September 28, 2022. Defendants filed their own Motion for Summary Judgment (ECF No. 16) on September 14, 2022. Plaintiff filed a Memorandum in Opposition (ECF No. 18) to Defendants' Motion on October 14, 2022, and Defendants filed their Reply (ECF No. 20) on October 28, 2022.

On October 28, 2022, Plaintiff and Defendants filed a Joint Status Report (ECF No. 19),

indicating that they would be best positioned to assess the status of the case from their respective positions once the court had come to a decision on the aforementioned dispositive motions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors

could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 870 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment; it is not enough to show that there is slight doubt as to material facts." *Id.* (internal citations omitted). Moreover, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

A court may grant summary judgment *sua sponte* to a non-moving party so long as the moving party "was on notice that she had to come forward with all of her evidence." *Celotex*, 477 U.S. at 326. Thus, if an issue was already raised and fully addressed by both sides, a court

may grant summary judgment *sua sponte* to the non-moving party. *Delphi Auto. Sys., LLC v. United Plastics*, *Inc.*, 418 F. App'x 374, 380 (6th Cir. 2011)

### III. LAW AND ANALYSIS

**A. Plaintiff's Suit Against Defendant Graham in His Official Capacity**

As a preliminary matter, Defendants argue that Graham should be dismissed from this litigation as a named Defendant because Plaintiff's action against Graham in his official capacity as CEO is duplicative of her action against the Board. (Def.'s Mot. at PageId #123, ECF No. 16.) The Sixth Circuit has held that "[a] section 1983 action against a city official in his or her official capacity is treated as an action against the [municipal entity] itself." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir.1992)). Therefore, courts have found that, "official-capacity claims against a governmental agent should be dismissed as duplicative when the plaintiff has also named the governmental entity as a defendant[,]" and that, "[w]hether or not it is required, ... dismissal of official-capacity claims is permitted and judicious when the reasonable entity is also named as a defendant in the case." *Castleberry v. Cuyahoga Cnty.*, 2020 WL 3259250, at *2 (N.D. Ohio June 16, 2020); *see also Ferritto v. Cuyahoga Cnty.*, 2017 WL 4792315, at *3 (N.D. Ohio Oct. 20, 2017) ("The Court holds that a suit against a governmental employee in his official capacity is the equivalent of a suit against the public entity itself. Since they are duplicative of Plaintiff's claims against the County of Cuyahoga, the § 1983 claims against [Defendants] in their official capacities are dismissed.").

Here, Plaintiff has brought suit against Defendant Graham only in his official capacity as CEO of the Lorain City School District, and has also brought suit against the Board of Education of the Lorain City School District. (Compl. at PageID #1, ECF No. 1.) Because the official capacity

-8-

suit against Graham is essentially a suit against the District, the court finds it duplicative of the action against the Board, and therefore dismisses Graham from this litigation as a named Defendant.

**B. Plaintiff's Property Interest in Her Administrator's Contract**

In order to invoke the requirements of procedural due process, a plaintiff must first show that they have suffered "the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). As articulated by the Supreme Court in *Roth*, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. In *Cleveland Board of Education v. Loudermill*, the Supreme Court recognized a property interest in continued employment for "'classified civil service employees,' entitled to retain their positions 'during good behavior and efficient service,' who could not be dismissed 'except ... for ... misfeasance, malfeasance, or nonfeasance in office[.]'" 470 U.S. 532, 538–39.

Defendants argue that, as a threshold matter, Pustulka is not entitled to due process rights under *Loudermill* because that case concerned "classified civil servants," of which Pustulka is not one. (Resp. at PageID #120, ECF No. 16.) However, the question is not whether Pustulka is a classified civil servant in particular, but whether she is a state employee with claim of entitlement to her continued employment as an administrator.

Pustulka's administrator's contract, and the state law under which it was executed, clearly created for her a property interest in her continued employment. The contract specifies that it is "under" and "executed in accordance with" Ohio Revised Code § 3319.02. (Pl.'s Mot. Ex. A at

PageID #79, ECF No. 14-1.) The contract provided for Pustulka's employment as an administrator from August 1, 2020, through July 31, 2022. (*Id.*) During that time, she was "subject to reassignment to any position for which the District requires administrative certification/licensure[,]" and her employment was "contingent upon the continuation, at current levels, of any state and/or federal funding which directly supports the position to which the Administrator has been assigned." (*Id.* at PageID #80.) Otherwise, § 3319.02 provides that:

> Except by mutual agreement of the parties thereto, no assistant superintendent, principal, assistant principal, or other administrator shall be transferred during the life of a contract to a position of lesser responsibility. No contract may be terminated by a board except pursuant to section 3319.16 of the Revised Code.

OHIO REV. CODE ANN. § 3319.02(C). Section 3319.16, in turn, provides that a contract "may not be terminated except for good and just cause." Pustulka therefore held an expectation, under the terms of her administrator's contract and the state law in accordance with which it was executed, that absent a discontinuation of state and/or federal funding directly supporting her position, she would not be terminated or transferred to a non-administrative position except for good cause. This arrangement was sufficient to create a property interest in continued employment that required procedural due process protections, as articulated in *Roth* and *Loudermill*.

Defendants argue that the aforementioned statutory protections did not apply to Plaintiff's contract at the time she was terminated because, once the District entered a state of academic distress, the provisions of Ohio Revised Code § 3302.10 superceded those of §§ 3319.02 and 3319.16. (Def.'s Mot. at PageID #121, ECF No. 16.) Defendants therefore take the position that, "[a] school administrator in an academically distressed school district as contemplated under Revised Code 3302.10 – as Ms. Pustulka used to be – is analogous to an at-will employee[,]" and that

Graham could therefore terminate her without need for the procedure outlined in § 3319.16. (Def.'s Reply at 2, ECF No. 20.) In support of this contention, Defendants cite *Youngstown City School District Board of Education v. State*, in which the Supreme Court of Ohio found that it was not a violation of the Ohio Constitution for § 3302.10 "to remove nearly all the power and authority from a city school board and to place that authority in a chief executive officer under the circumstances contemplated by the law." 161 Ohio St.3d 24, 32 (Ohio 2020). Because § 3302.10 grants to the CEO of a distressed school district "complete operational, managerial, and instructional control of the district...[including r]eplacing school administrators and central office staff...[and h]iring new employees[,]" with no mention of pre- or post-termination procedures, Defendants argue that the state legislature intended to allow CEOs to circumvent the ordinary termination procedures in executing their plans to improve distressed districts. OHIO REV. CODE ANN. §3302.10(C).

The court cannot accept Defendants' interpretation of the impact of § 3302.10 on administrator termination procedures. As articulated by the Supreme Court of Ohio in *Youngstown*, the academic distress statute "allow[s] an academic-distress commission to remove nearly all the power and authority from a city school board and to place that authority in a chief executive officer." 161 Ohio St.3d at 32. The function of the § 3302.10 provisions cited by Defendants is to concentrate the powers ordinarily exercised by a board of education—including the power to remove and replace administrators—into a single CEO who is accountable to the academic distress commission and charged with improving academic outcomes in the distressed district. *See* OHIO REV. CODE ANN. §3302.10(C)(1) ("the commission shall appoint a chief executive officer for the district, who...shall serve at the pleasure of the commission"). Indeed, Pustulka's administrator's contract identifies itself as an agreement between Pustulka and "the CEO/Board of Education[,]" suggesting that the two

-11-

serve interchangeable roles depending on whether a District is in academic distress or not. Therefore, absent explicit statutory text to the contrary, the court concludes that the state legislature intended for the CEO to exercise the board's power to terminate employees subject to the same statutory limitations that constrain the board's ordinary exercise of that power. To transform all administrators from for-cause employees into at-will employees, merely because their district as a whole has been classified as academically distressed, would constitute an exercise of power far beyond what a board of education could undertake in a non-distressed district. Furthermore, treating administrators as for-cause employees does not impede the work of the CEO, as the same rationale that would lead a CEO to conclude that replacing an administrator would improve a district's performance should also constitute good and just cause for removal under § 3319.16. For these reasons, the court concludes that when a CEO adopts the board of education's power to terminate administrators in academically distressed districts, they do so subject to the requirement that such terminations must be for good and just cause under §§ 3319.02 and 3319.16.

Pustulka thus remained removable only for cause even once § 3302.10 had taken effect in the District, and accordingly, she held a property interest in her continued employment as an administrator at the time she was terminated by Graham.

**C. The Procedural Protections Around Plaintiff's Termination**

By terminating Pustulka's contract, the District deprived her of her property right in continued employment as an administrator. The court must next determine whether Defendants afforded Pustulka the due process to which the Fourteenth Amendment entitled her in the face of such a deprivation.

The Supreme Court made clear in *Loudermill* the procedures owed when a public employee

with a property interest in their continued employment is terminated, stating that, "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio Statute." *Loudermill*, 470 U.S. at 547–48. The statute referred to in that case is Ohio Revised Code § 124.34, which provides that civil servants removable only for cause may, when removed from office, appeal to the state personnel board of review, and then to the court of common pleas. The analogous post-termination provisions for public education employees are found in Ohio Revised Code § 3319.16, which entitles teachers or administrators subject to termination to demand a hearing before either the board of education or a referee, complete with the following procedures:

> Both parties may be present at such hearing, be represented by counsel, require witnesses to be under oath, cross-examine witnesses, take a record of the proceedings, and require the presence of witnesses in their behalf upon subpoena to be issued by the treasurer of the board. In case of the failure of any person to comply with a subpoena, a judge of the court of common pleas of the county in which the person resides, upon application of any interested party, shall compel attendance of the person by attachment proceedings as for contempt. ... Any teacher affected by an order of termination of contract may appeal to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order.

OHIO REV. CODE ANN. § 3319.16. The Sixth Circuit has stated that these procedures "constitute procedural due process in a contract termination proceeding." *Whitsel v. Se. Loc. Sch. Dist.*, 484 F.2d 1222, 1229 (6th Cir. 1973).

Defendants provided, and Plaintiff participated in, a *Loudermill* pre-termination hearing on December 10, 2021. (Def.'s Opp'n Ex. 2 at PageID #107, ECF No. 15-2.) Pustulka was subsequently terminated on December 16, 2021, and demanded a referee hearing pursuant to

§ 3319.16 on December 21, 2021. (Pl.'s Mot. Ex. D at PageID #83, ECF No. 14-1.) In a letter dated January 3, 2022, the Board treasurer denied Pustulka a post-termination hearing as to her administrator's contract, explaining that,

> It is the position of this school district that as a district under academic distress, pursuant to ORC 3302.10, the CEO of the district has plenary authority to remove Ms. Pustulka from her position as principal of Palm Elementary. This district therefore objects to the jurisdiction of any referee to determine whether the termination of Ms. Pustulka as principle was for good cause.

(*Id.*)

Once again, the court cannot endorse Defendants' reading of § 3302.10 as an end run around the procedures set forth in §§ 3319.02 and 3319.16. The court declines to assume that in transferring the removal power of a board of education to a CEO, the legislature intended to remove all procedures in place to protect for-cause employees, thereby undermining the due process rights of public school administrators. As enunciated by the Supreme Court in *Loudermill*, "[t]he right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" 470 U.S. at 541 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (Powell, J., concurring in part and concurring in result in part)). Having established public school administrators as for-cause employees, and having thereby created a property interest in those positions, the legislature could not have vested in the CEO of an academically distressed district the power to terminate those rights without procedural safeguards like those required by § 3319.16. Nor, indeed, does it appear that the legislature intended to do so, as nowhere in § 3302.10 is there any explication that removals

by a CEO are an exception to the usual procedures for removal by a board of education. Therefore, contrary to Defendants' suggestion in their briefing, the court need not find § 3302.10 unconstitutional in order to find for Plaintiff here—it need only read § 3302.10 to operate in conjunction with §§ 3319.02 and 3319.16, an interpretation fully supported by the statutory text.

Defendants argue that, even assuming Plaintiff was entitled to post-termination due process, she was not necessarily entitled to the particular processes set forth in § 3319.16. (Def.'s Mot. at PageID #121, ECF No. 16.) In theory, the legislature could have prescribed different procedures for removals by a CEO in an academically distressed district than for standard removals by a board of education, so long as those CEO removal procedures also passed Fourteenth Amendment muster. However, the legislature has not done so, as § 3302.10 is silent as to any protections owed if and when a CEO decides to exercise their power to remove employees. Because the court does not believe that the legislature intended for § 3302.10 to eliminate procedural protections for administrators in violation of the Fourteenth Amendment, and because the Sixth Circuit has found that the procedures in § 3319.16 "constitute procedural due process in a contract termination proceeding[,]" *Whitsel*, 484 F.2d at 1229, the court reads § 3302.10 to incorporate the procedures of § 3319.16 into removals by a CEO. Accordingly, Defendants should have followed the procedures in § 3319.16 when terminating Plaintiff's administrator's contract.

### C. Summary Judgment Determination

There exists no genuine dispute as to the following facts: 1) Plaintiff had a contract to work as an administrator in the District effective from August 1, 2020 through July 31, 2022, executed under Ohio Revised Code § 3319.02; 2) Defendants terminated Plaintiff's contract on December 16, 2021, after holding a *Loudermill* pre-termination hearing with Plaintiff; 3) Plaintiff requested

-15-

a post-termination hearing before a referee under Ohio Revised Code § 3319.16; and 4) Defendants denied the requested post-termination hearing, stating that, "pursuant to ORC 3302.10, the CEO of the district has plenary authority to remove Ms. Pustulka from her position as principal[,]" and that they "therefore object[] to the jurisdiction of any referee to determine whether the termination of Ms. Pustulka as principle was for good cause." (Pl.'s Mot. Ex. D at PageID #83, ECF No. 14-1.)

In light of these undisputed facts, to whom summary judgment as to liability should be granted turns on whether Defendants' interpretation of § 3302.10 as superceding § 3319.16 is correct as a matter of law. For the reasons set forth above, the court concludes that it is not. The relevant state law required Defendants to provide Plaintiff with the referee hearing that she requested after receiving notice of her termination as an administrator. Because a reasonable juror could only conclude based on the facts recounted above that Defendants failed to provide the requisite hearing, the court grants Plaintiff's Motion for Summary Judgment as to Liability (ECF No. 14), and denies Defendants' Motion for Summary Judgment . (ECF No. 16); *see Anderson,* 477 U.S. at 252.

### IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion for Summary Judgment as to Liability (ECF No. 14), and denies Defendants' Motion for Summary Judgment. (ECF No. 16.) Furthermore, Defendant Graham is dismissed from this litigation as a named Defendant. The court will hold a telephonic pretrial status conference with counsel for the parties at 11:00 a.m. on January 25, 2023, to discuss the process for determining damages in this case.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

January 5, 2023